IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RPM PIZZA, LLC**                                                                                    **PLAINTIFF**

v.                                                                          CAUSE NO. 1:21-cv-158-LG-RHWR

**RISK & INSURANCE CONSULTANS,
INC., ROBERT KITCHENS, JR.,                                     DEFENDANTS/COUNTER-
STEVEN MOLINA, and APPLIED                                                   PLAINTIFFS
RISK SOLUTIONS, LLC**

v.

**RPM PIZZA, LLC**                                                                    **COUNTER-DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF/COUNTER-DEFENDANT'S
MOTIONS TO DISMISS COUNTERCLAIM**</u>

**BEFORE THE COURT** are two [15] [18] Motions to Dismiss, both filed by Plaintiff and Counter-Defendant, RPM Pizza, LLC. The Defendants/Counter-Plaintiffs did not respond to the first Motion, but the second Motion is fully briefed. After due consideration of the parties' submissions, the record in this matter, and the applicable law, the Court finds that the Motions should be granted.

BACKGROUND

Plaintiff RPM Pizza, LLC is "a franchisee of Domino's Pizza, with approximately 130 locations throughout Mississippi, Louisiana, and Alabama." (Compl., ¶ 11, ECF No. 1). In December 2011, Plaintiff began acquiring insurance through Defendant Risk & Insurance Consultants, Inc. ("RIC"), "an insurance agency, brokerage, and risk management business." (*Id.* ¶ 12.). Defendants Kitchen and Molina are affiliated with RIC. (*Id.*).

Plaintiff alleges that Defendants Kitchen and Molina marketed a risk retention group, a type of state-chartered insurance company, called "Hospitality Risk Retention Group" (HRRG) to Domino's Pizza franchisees, allegedly pitching it as "necessary" coverage which would not be available through traditional insurance carriers. (*Id.* ¶¶ 14-15). Plaintiff agreed to the proposal and became a member of HHRG. (*Id.* ¶ 16). Subsequently, Plaintiff discovered various insufficiencies in its coverage, which coverage (or lack thereof) it alleges had been falsely represented by Defendants. (*Id.* ¶¶ 17-20). Specifically, when a delivery driver was involved in a "serious auto accident" during his duties, Plaintiff was left "functionally uninsured" in the lawsuit arising out of the accident. (*Id.* ¶¶ 20-27). These "acts, errors, representations and omissions have directly resulted in a catastrophic claim against RPM for which it ostensibly lacked insurance coverage, despite RPM having paid hundreds of thousands of dollars for that coverage." (*Id.* ¶ 34).

Plaintiff named RIC, Kitchens, Molina, and Risk Solutions, LLC in its subsequent lawsuit.[1] On July 20, 2021, Defendants answered and counterclaimed, seeking damages for slander and "tortious interference." (*See* Countercl., ¶¶ 1-10, ECF No. 11). On August 19, 2021, Plaintiff [15] moved to dismiss the counterclaim, to which Defendants did not respond. Instead, Defendants amended their answer and counterclaims, identifying the second claim as "tortious interference with business relations." Defendants/Counter-Plaintiffs alleged that Plaintiff's

---

[1] Defendant Risk Services, LLC was also named but has been voluntarily dismissed. (*See* Not. Vol. Dismissal, ECF No. 13).

representatives "orally made numerous false statements to current and former Hospitality Risk Retention Group policyholders regarding Defendants RIC, ARS, Molina, and Kitchen." (*Id.* ¶ 2). The policyholders in question were "at least three Domino's Pizza franchisees." (*Id.*). The allegedly defamatory statements were allegedly part of "an effort to damage Defendants' ongoing or future business relationships with Domino's Pizza franchisees." (*Id.*).

On September 13, 2021, Plaintiff filed a second [18] Motion to Dismiss directed at the First Amended Counterclaims, asserting that they "suffer from the same defects as the originals." (Mem. Supp. Mot. Dismiss. Countercls., 1, ECF No. 19). Defendants [22] responded, and Plaintiff [25] replied to the Response. The issues are now fully briefed and ripe for disposition by the Court.

## DISCUSSION

### I. Rule 12(b)(6) Motion to Dismiss Standard

To survive a Motion to Dismiss filed under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In considering a Rule 12(b)(6) motion, the Court "must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff."

*Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). Further, "all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). In determining whether claims survive a Rule 12(b)(6) motion, the court may review the facts set forth in the complaint, documents attached to the complaint, and matters of which the court may take judicial notice under Federal Rule of Evidence 201. *Id.*

## II. Slander Claims

Defendants first bring a counterclaim for slander. (1st Am. Countercl., ECF No. 17). Defendants complain that Plaintiff "engaged in a concerted effort to make false statements regarding Defendants to current and former policyholders," including unnamed "franchisees" based in Texas, South Carolina, and North Carolina. (*Id.* ¶ 2). Defendant relates the "general topics" of these statements, including mismanagement, fraud, and the like. (*Id.* ¶ 3). Defendant alleges that Plaintiff's scurrilous campaign caused its fellow policyholders to "mov[e] their insurance-related business to other insurance agents," leading to "significant losses in business revenue." (*Id.* ¶¶ 1-8).

Plaintiff raises three objections to these slander claims, arguing: first, Defendants fail to set forth the alleged statements, paraphrased or verbatim, with sufficient specificity, as required by Mississippi case law; second, they fail to identify the policyholders to whom Plaintiff made the allegedly slanderous statements; and third, they fail to specify the timeframe of the alleged slander.

(Mem. Supp. Mot. Dismiss Am. Countercls., ECF No. 19).

Slander is a species of defamation, differentiated by virtue of its oral or nonwritten character.[2] A claim of defamation requires the claimant to establish a false statement having the capacity to injure the claimant's reputation, in addition to other elements. *Funderburk v. Johnson*, 935 So. 2d 1084, 1101 (Miss. Ct. App. 2006) (citing *Fulton v. Miss. Publishers Corp.,* 498 So. 2d 1215, 1216 (Miss. 1986)). "Mississippi law requires that a complaint for defamation must provide allegations of sufficient particularity so as to give the defendant or defendants notice of the nature of the complained-of statements." *Chalk v. Bertholf*, 980 So. 2d 290, 297 (Miss. Ct. App. 2007).

Hence, a plaintiff alleging slander must include in his complaint "the statements, paraphrased or verbatim, that constituted slander." *Id*. at 298. "Without setting forth any information in the complaint regarding the statements, to whom the statements were directed, by whom the statements were made, and how the statements were slanderous, the allegation that [Plaintiffs] made 'slanderous statements' constitutes a bare legal conclusion with no support in the complaint." *Id.* "Under Mississippi law, the trial court in a defamation case must make the threshold determination of whether the language in question is actionable." *Mitchell v. Random House, Inc.*, 703 F. Supp. 1250, 1256 (S.D. Miss. 1998) (citation omitted).[3]

---

[2] Defamation is divided into two torts—libel for written defamations and slander for those made orally. *Speed v. Scott,* 787 So. 2d 626, 631 (Miss. 2001).
[3] This is a stringent standard. Defendants' attempt to lighten their burden is

The Court will, pursuant to these words, consider whether Defendants have paraphrased the alleged slander with sufficient particularity, and then whether these paraphrased claims are actionable. Here, Defendants merely relate the "general topics" of Plaintiff's allegedly slanderous comments. (Am. Countercl., ¶¶ 3(a)-(f), ECF No. 17). "Mississippi law is well established in holding that in order to bring a claim for defamation, 'the words used must have been clearly directed at the plaintiff and the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.'" *Id.* at 296 (quoting *Chatham v. Gulf Publ'g Co.*, 502 So. 2d 647, 650 (Miss. 1987) (interpolations omitted)).

"'In this state a communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community *or to deter third persons from associating or dealing with him*.'" *Eselin-Bullock & Assocs. Ins. Agency, Inc. v. Nat'l Gen. Ins. Co.*, 604 So. 2d 236, 241 (Miss. 1992) (quoting *Whitten v. Comm. Dispatch Publ'g Co., Inc.*, 487 So. 2d 843, 844 (Miss. 1986)) (emphasis in original). Thus, "[a] publication is *per se* defamatory if it tends to injure another in his trade, business or profession." *Hardy Bros. Body Shop, Inc. v. State Farm Mut.*

---

incorrect, as "[b]oth the Fifth Circuit and the Mississippi Supreme Court have emphasized that this requirement must be strictly enforced." *Cooper v. Paragon Sys., Inc.*, No. 5:08CV169-DCB-JMR, 2008 WL 4187942, at *3 (S.D. Miss. Sep. 5, 2008) (citing *Mize v. Harvey Shapiro Enters., Inc.*, 714 F. Supp. 220, 224 (N.D. Miss. 1989) ("The Fifth Circuit has recognized that these requirements are stringently applied by Mississippi courts and indicated that it will do the same.")). This is an extension of the "minimal notice pleading standard" of Fed. R. Civ. P. 8, which "requires the plaintiff to put the defendant on notice of what conduct she claims gives rise to her defamation claim." *Cooper*, 2008 WL 4187942, at *3.

*Auto. Ins. Co.*, 848 F. Supp. 1276, 1288 (S.D. Miss. 1994) (citing *Sheffield v. Journal Publ'g Co.*, 51 So. 2d 479, 481 (Miss. 1951)); *see also Cook v. Wallot*, 172 So. 3d 788, 798 (Miss. Ct. App. 2013) (recognizing "[w]ords imputing a want of integrity or capacity, whether mental or pecuniary, in the conduct of a profession, trade or business" as "slander per se"); *McFadden v. U.S. Fid. & Guar. Co.*, 766 So. 2d 20, 24 (Miss. Ct. App. 2000). Moreover, "[c]harges of incompetence, if made with malice, may serve as a basis for a defamation action." *Hardy Bros. Body Shop*, 848 F. Supp. at 1288 (citing *Holland v. Kennedy*, 548 So. 2d 982, 987 (Miss. 1989)). Finally, "a single charge of lying or dishonesty, if it otherwise meets the test of defamation, may be actionable." *Lawrence v. Evans*, 573 So. 2d 695, 698 (Miss. 1990) (citing *Caswell v. Manhattan Fire & Marine Ins. Co.*, 399 F.2d 417, 420-21 (5th Cir. 1968)). Therefore, these statements are defamatory if they tend to injure Defendants in their insurance brokerage business, maliciously claim incompetence as insurance brokers, or allege lying or dishonesty, where it otherwise meets defamation.

The slander counterclaim contains several disputed, paraphrased claims, allegedly spoken by Plaintiff's "members, officers, employees or agents" to unnamed policyholders (1st Am. Countercl. ¶ 2, ECF No. 17), including that Defendants created the company in violation of internal policies and misrepresented its formation (*Id.* ¶ 3(a)), mismanaged it and acted fraudulently in failing to obtain adequate capital and reinsurance (*Id.* ¶ 3(b)), fraudulently, intentionally or grossly negligently mismanaged claims (*Id.* ¶ 3(c)), and incompetently or fraudulently caused it to enter state-supervised run-off and liquidation proceedings. (*Id.* ¶¶ 3(d)-

(e)). These claims are certainly opprobrious of Defendants' business and competence as insurance brokers, and the claims of fraud impute lying and dishonesty to Defendants in their profession. The defamatory character is thereby "clear and unmistakable" in the form alleged. *See Chalk*, 980 So. 2d at 297. Hence, the Court finds that Defendants adequately paraphrase the disputed claims, and such claims are of a defamatory character.[4]

However, Defendants do not circumstantiate their claims of slander. First, Defendants do not set forth the identity of the recipients of the slanderous comments, as required by the Mississippi Supreme Court. *See Chalk*, 980 So. 2d at 298 (holding that the complaint must allege "to whom the statements were directed [and] by whom the statements were made"). This Court has previously dismissed similar claims where "[t]he complaint contain[ed] conclusory allegations . . . that the results were 'disclosed' to unnamed individuals." *Brisco v. LeTourneau Techs., Inc.*, No. 5:07CV99-DCB-JMR, 2008 WL 4793791, at *5 (S.D. Miss. Oct. 27, 2008); *see also Belfor USA Grp., Inc. v. Imperial Drywall, LLC*, No. 1:07CV586-HSO-JMR, 2008 WL 2704005, at *3 (S.D. Miss. July 3, 2008) ("[N]or has Imperial identified by whom any such purported statements [were] made, to whom they were directed, or

---

[4] Simultaneously, however, "[o]pinions cannot be the subject of a defamation suit." *Hardy Bros. Body Shop*, 848 F. Supp. at 1288. "[S]tatements of opinion are actionable 'only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion.'" *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 493 (5th Cir. 2013) (citing *Ferguson v. Watkins*, 448 So. 2d 271, 276 (Miss. 1984)). Here the Court must distinguish between the claims paraphrased in the Counterclaim. The Court finds that these claims may be proved either true or false. *See Franklin v. Thompson*, 722 So. 2d 688, 693 (Miss. 1998).

how they were slanderous."). Defendants attempt to circumvent this problem with reference to "current and former policyholders" to which Plaintiff allegedly spoke: "at least three Domino's Pizza franchisees" based in Texas, South Carolina, and North Carolina. (1st Am. Countercl., ¶¶ 2-3, ECF No. 17). The identities of these policyholders are not set forth in the Counterclaim or elsewhere. Therefore, Defendants' slander claim fails in this regard.

Second, the Court agrees that Defendants' Counterclaim fails to set forth the minimum facts as to when and how the alleged slander took place. *See Jones v. City of Hattiesburg*, 228 So.3d 816, 818 (Miss. Ct. App. 2017) ("Jones's complaint still failed because she did not plead with any particularity the claims she asserted. Jones never stated the specific person or persons who purportedly defamed [or] slandered . . . her, nor did she state with any specificity when, where, or how the act took place.") (citing *Chalk*, 980 So. 2d at 298-99). Defendants date the slanderous comments as broadly "[b]etween January 1, 2021, to the present day." (1st Am. Countercl., ¶ 2, ECF No. 17). The First Amended Counterclaim was filed September 2, 2021 (*Id.*), so the conversations are chronicled in a sweeping eight-month window. Further, Defendants state no circumstances of the alleged "conversations" between Plaintiff's unnamed members, agents, officers and employees and the unnamed policyholders. (*Id.* ¶¶ 2-3). Neither does the Counterclaim specify which party or parties Plaintiff slandered via each claim. *See Chalk*, 980 So. 2d at 298 ("[T]he complaint failed to specify which of the twelve plaintiffs was slandered by which of the two defendants."). Defendants need not

specify the circumstances of the slander with exacting precision, but the Amended Counterclaim in its current form fails to put Plaintiffs on notice of what precisely is at issue in these claims. Therefore, the slander claim is insufficiently pled and must be dismissed.

### III. Tortious Interference with Business Relations Claim

The Amended Counterclaim advances a claim for tortious interference with business relations. (1st Am. Countercl., ECF No. 17). According to the allegations, Plaintiff made "an effort to damage Defendants' ongoing or future relationships with Domino's Pizza franchisees" through its "false statements regarding Defendants to current and former policyholders." (*Id.* ¶ 3). "Plaintiff made such statements for the intended purpose of convincing its fellow policyholders to cease conducting business with Defendants and to move their insurance business to other insurance agencies that compete with Defendants," ultimately "for the express purpose of damaging Defendants' ongoing and future business relationships with Domino's Pizza franchisees." (*Id.* ¶ 6).

"'Tortious interference with business relations occurs when a person unlawfully diverts prospective customers away from one's business.'" *Seven Seas Techs., Inc. v. Infinite Computer Sols., Inc.*, 353 F.Supp.3d 545, 549 (S.D. Miss. 2018) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)) (interpolations omitted). The claimant must show: "(1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiff in its lawful business; (3) The acts were done with the unlawful purpose of causing

damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) Actual damage and loss resulted." *Seven Seas Techs.*, 353 F.Supp.3d at 549 (citing *MBF Corp. v. Century Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995)) (interpolations omitted).

Plaintiff argues that Defendants' tortious interference with business relations counterclaim fails as a matter of law because it is entirely predicated on the slander counterclaim. (Mem. Supp. Mot. Dismiss Am. Countercls., at 7, ECF No. 19). Plaintiff targets the third element and maintains that it has done nothing "without right or justifiable cause," beyond Defendants' insufficient allegations of slander. (*Id.*). Defendants respond that the tortious interference claim does not hinge on the slander claim. (Mem. Supp. Resp. Pl.'s Mot. Dismiss, ECF No. 7-9).

The slander counterclaim has indeed been dismissed, but the Court must distinguish it from the claim of tortious interference with business relations. While the claims are based on the same set of facts, and while the claims may ultimately affect one another, there is no indication that Defendant cannot prove facts differentiable between the claims. In cases where Defendant alleges slander or defamation and tortious interference with business relations in the same conduct, Mississippi courts seem to analyze these issues separately. *See Richard v. Supervalu, Inc.*, 974 So. 2d 944, 950 (Miss. Ct. App. 2008) (dismissing slander claims at summary judgment on the merits, then dismissing tortious interference with business relations on a separate analysis); *see also Hardy Bros. Body Shop, Inc.*, 848 F. Supp. at 1291-92 (dismissing slander claim at summary judgment on

the merits, then dismissing tortious interference with business relations claim separately, where both acts arose out of defendant's same "giving of form letters to its insured vehicle owners"); *U.S. Axminster, Inc. v. Chamberlain*, No. 4:95CV332-D-B, 1997 WL 786772, at *2-5 (N.D. Miss. Oct. 22, 1997).⁵  Therefore, the Court will not automatically dismiss the tortious interference with business claim as an extension of the slander claim.

Nevertheless, the Court finds Defendants' tortious interference with business claim deficient.  First, although this claim exists independently of the slander claim, Defendants do not plausibly allege that "[t]he acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause (which constitutes malice)."  *Seven Seas Techs.*, 353 F.Supp.3d at 549.  Defendants do not submit any unjustified or wrongful interest or motivation Plaintiff may have had in orally informing its fellow policyholders of supposed falsehoods about Defendants.  *See Gasparrini v. Bredemeier*, 802 So. 2d 1062, 1067-68 (Miss. Ct. App. 2001) (distinguishing between the defendants' actions as "directed at causing damage to [plaintiff]'s business" from the defendant's act as without justifiable cause,

---

⁵ Plaintiff's supporting cases here are of no avail, as the cases apply Florida and New York law respectively.  *Utterback v. Trustmark Nat'l Bank*, No. 3:15CV163-HTW-LRA, 2017 WL 5654732, at *8 (S.D. Miss. Mar. 30, 2017) (reasoning with respect to a tortious interference claim that it is dispositive that plaintiff utterly failed to show defamation) (applying Florida law); *Direct Wireless, LLC v. Verizon Wireless Personal Comms., LLP*, No. 3:09CV62-DPJ-JCS, 2009 WL 1976487, at *4 (S.D. Miss. July 7, 2009) (agreeing with defendant's proposal to dismiss a tortious interference claim based on a dismissed fraud claim by citing to a New York case "dismissing [a] tortious interference claim based on dismissed allegation of slander") (citing *Snyder v. Sony Music Ent., Inc.*, 684 N.Y.S.2d 235, 239 (N.Y. App. Div. 1999)) (applying New York law).

particularly in their "desire for retribution"). Second, the courts of Mississippi require that the claimant identify the timeframe of the interference as well as the customers or business relationships which were lost. *See Green Hills Dev. Co., LLC v. Oppenheimer Funds, Inc.*, No. 3:19CV416-DPJ-FKB, 2020 WL 376659, at *6 (S.D. Miss. Jan. 23, 2020); *Pie Dev., LLC v. Pie Ins. Hldgs., Inc.*, No. 3:19CV792-HTW-LGI, 2021 WL 3206043, at *10 (S.D. Miss. July 21, 2021) ("'While the pleading standards are not onerous, federal courts have dismissed claims for tortious interference where the claimant fails to identify any customers or potential customers that it lost because of its adversary's wrongful conduct.'") (quoting *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17CV2-DMB-DAS, 2019 WL 1245787, at *4 (N.D. Miss. Mar. 18, 2019)). As with the slander claim, the Court finds that the tortious interference claim is not supported by specific and plausible allegations and must be dismissed.

### IV. Amendment and Request for Protective Order

By way of their response brief, Defendants request that the Court "allow Defendants to re-plead subject to a protective order to protect against further harm flowing from Plaintiff's actions." (Mem. Supp. Resp. Mot. Dismiss, 1-2, ECF No. 23). Defendants have not moved for a protective order beyond this passing request in their response brief. "Any written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this Rule." L.U. Civ. R. 7(b). Therefore, the Court will construe Defendants' request as a Motion for Leave to File a Second Amended

Counterclaim with Restricted Access.

First, the Court considers Defendants' application to file a Second Amended Counterclaim. Defendants have already amended their Counterclaim once. Therefore, Rule 15(b) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(b). "The decision to grant or deny a motion to amend pleadings is entrusted to the sound discretion of the district court." *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). The Rule "evinces a bias in favor of granting leave to amend," but it "should not be given automatically." *Chitimacha Tribe*, 690 F.2d at 1163. In determining whether to grant leave to amend under Rule 15(a), "the court may consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment.'" *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (alteration in original) (citations omitted).

The Court finds no indication that Defendants are motivated by bad faith or a dilatory intent in requesting leave to file an amendment. Neither is there any reason to believe that such amendment would cause undue delay or prejudice to Plaintiff, since this litigation is still in its infancy. Further, although Defendants amended their counterclaim once in response to Plaintiff's original Motion, the Court believes that the pleading deficiencies highlighted in this Order are

correctable.  The Court will therefore exercise its discretion and allow Defendants to file a Second Amended Counterclaim.

Next, the Court considers Defendants' request to file a Second Amended Counterclaim with restricted access.  "Courts have recognized that the public has a common law right to inspect and copy judicial records."  *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597 (1978)).  Thus, "all pleadings and other material filed with the court ('court records') become a part of the public record of the court," unless provided otherwise by statute or rule.  L.U. Civ. R. 79(a).  There is thereby a "presumption in favor of the public's common law right of access to court records," *Van Waeyenberghe*, 990 F.2d at 849.  Defendants have not offered any reason which surmounts this presumption beyond an unelaborated reference to "further harm flowing from Plaintiff's actions."  (Mem. Supp. Resp. Mot. Dismiss, 2, ECF No. 23).  The Court therefore declines to restrict access to the Second Amended Counterclaim, should Defendants choose to file one.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [15] [18] Motions to Dismiss filed by Plaintiff and Counter-Defendant, RPM Pizza, LLC, are **GRANTED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants are granted leave to file a Second Amended Counterclaim within fourteen (14) days of the date of this Memorandum Opinion and Order.  The request to file a "restricted" Second Amended Complaint is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 8th day of November, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE